**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
Daniel J. Brenner
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Tel: (914) 775-8862
jbm@wittelslaw.com
djb@wittelslaw.com

### UNITED STATES DISTRICT COURT
### DISTRICT OF COLORADO

|  |  |
|---|---|
| **PATRICK SHAFFER,**<br><br>on Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>**ECOSHIELD PEST SOLUTIONS DENVER, LLC, ROBERT DOUGLAS CARDON, GREGORY NYGREN, THE SHIELD COMPANIES, LLC,** and **THE SHIELD CO MANAGEMENT, LLC,**<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Patrick Shaffer ("Plaintiff"), by his undersigned attorneys, Wittels McInturff Palikovic, brings this consumer protection action in his individual capacity and on behalf of a class of consumers defined below against Defendants EcoShield Pest Solutions Denver LLC, Robert Douglas Cardon, Gregory Nygren, The Shield Companies, LLC, The Shield Co Management, LLC, (hereafter, "Defendants," "EcoShield," or the "Company") and hereby alleges the following with knowledge as to his own acts and upon information and belief as to all other acts:

## **INTRODUCTION**

1.     This proposed class action lawsuit challenges EcoShield's deceptive sales practices and breach of its contracts with thousands of consumers across the United States.

2.     EcoShield is an exterminator that claims to have over 250,000 customers across 27 states. Instead of one-off extermination services, however, EcoShield sells subscriptions for recurring extermination service plans. These subscriptions are governed by a preprinted form contract that is materially the same for all EcoShield's customers. That contract is referred to hereafter as the "Service Agreement." Plaintiff's service agreement is attached as Exhibit A.

3.     Under the Service Agreement, each extermination visit carries a set fee. For example, after the initial service, each subsequent visit is billed at $199.

4.     In addition to the visit fees, the Service Agreement authorizes EcoShield to charge only two additional fees. There is a delinquency fee for late payments and a handling fee for bounced checks.

5.     While the Service Agreement authorizes visit fees, the delinquency fee, and the handling fee, the Service Agreement does not mention a cancellation fee.

6.     Nevertheless, when customers like Plaintiff try to cancel EcoShield's subscription, they are charged a costly cancellation fee. For example, Plaintiff was charged an unauthorized $150 cancellation fee.

7.      When customers contest this unauthorized fee, EcoShield sends them to collections, threatening to harm their credit and requiring them to deal with debt collectors.

8.      This is a deceptive practice. EcoShield disguises its cancellation fee as a supposed "discount." When customers sign up with EcoShield, they are automatically given an "Annual Commitment Discount" that purportedly reduces the cost of the initial service visit. For example, Plaintiff's initial service visit was supposedly automatically discounted from $500 to $350 by an "Annual Commitment Discount." But this so-called discount is no such thing. When a customer tries to cancel their subscription, EcoShield demands that the customer "repay" this "discount." EcoShield then gives the customer a Hobson's choice: repay the discount as a condition of cancellation or continue the unwanted subscription.

9.      In other words, the Annual Commitment Discount is a sneaky and unauthorized cancellation fee that EcoShield claims must be paid when the subscription is cancelled.

10.     By deceptively misrepresenting the actual terms and conditions of its subscription and obscuring the true nature of its cancellation fee, EcoShield misrepresents the obligations of its subscriptions. This conduct breaches the Service Agreement, violates consumer protection laws, and violates the common law.

11.     This pattern, practice, and policy is intentionally designed to unfairly and unlawfully extract additional payments from unwitting consumers.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendants because they transact substantial business in Colorado, have sufficient minimum contacts with this state, and otherwise purposefully avail themselves of the privileges of conducting business in Colorado by marketing, selling, and performing services in Colorado. Further, the injuries to Colorado consumers that Plaintiff seeks to prevent through public injunctive relief arise directly from EcoShield's

continuing conduct in Colorado, including, but not limited to, directing its scheme at Colorado consumers.

13.    Plaintiff and Defendants entered into the Service Agreement in Colorado, all services under the Service Agreement were performed in Colorado, and all payments were made in Colorado.

14.    All Defendants work in concert to perpetuate the scheme described herein, and all Defendants operate as a single fictitious entity or brand called "EcoShield" or "EcoShield Pest Solutions." This includes operating a single website, holding themselves out as a single entity, and entering contracts without specifying the legal entity responsible for performing the contract, instead referring only to fictitious entities or brands like "EcoShield." Upon information and belief, all Defendants maintain uniform policies and practices with respect to the allegations herein.

15.    The Service Agreement never specifies the legal entity contracting on "EcoShield's" behalf. The contract refers to the Company in varying ways, including as "EcoShield Pest Solutions – Denver South," "EcoShield," and "EcoShield Pest Solutions." Upon information and belief, neither "EcoShield Pest Solutions – Denver South," "EcoShield," nor "EcoShield Pest Solutions" are legal entities. Upon information and belief, Defendants do business as "EcoShield Pest Solutions – Denver South," "EcoShield," and "EcoShield Pest Solutions."

16.    Defendants operate the www.ecoshieldpest.com website. According to that website, EcoShield does business in Arizona, California, Colorado, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Nebraska, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Washington,

Virginia, and Wisconsin.[1] EcoShield's public statements about its geographic coverage imply that a single company operates in all 27 states.

17.     EcoShield lists the address for its regional offices, but each location offers potential new clients the same phone number. Moreover, all customers with billing questions, regardless of geographic location, are directed to call the same phone number. This implies that one entity is responsible for collection of all EcoShield customer receivables.

18.     "EcoShield" lists one single corporate address, located in Arizona as its "CORPORATE ADDRESS."[2]

19.     According to its website, EcoShield is "[t]rusted by over 250,000+ Homes and Businesses."

20.     "EcoShield" is a registered trademark with the United States Patent and Trademark Office ("USPTO"). Its registration date was March 12, 2013. The USPTO specifies that the "EcoShield" trademark is for "Pest control; Pest control and extermination other than for agricultural purposes; Termite and pest control."[3] According to the USPTO, when Plaintiff signed up, the "EcoShield" trademark was owned by Defendants Robert Douglas Cardon and Gregory Nygren.

21.     On March 17, 2022, Defendants Cardon and Nygren submitted printouts of the www.ecoshieldpest.com website to the USPTO in support of a declaration of use of the "EcoShield" trademark.

---

[1] https://www.ecoshieldpest.com/office-locations-2024.

[2] https://www.ecoshieldpest.com/contact.

[3] https://tsdr.uspto.gov/#caseNumber=85676487&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=documentSearch

22.　　According to the USPTO, on May 6, 2024, Defendants Cardon and Nygren assigned their interest in the EcoShield trademark to Defendant The Shield Companies, LLC.

23.　　This Court has subject-matter jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendants.

24.　　This Court has original subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act. However, if the Court determines that it lacks original jurisdiction over any claim in this action, it may exercise supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. § 1367 because all claims arise from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

25.　　Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged improper conduct occurred within this District, as Plaintiff resides in this District, the Service Agreement was executed in this District, the pest extermination services were performed in this District, all payments were made in this District, and Defendants reside in this District for venue purposes. *Id.* § 1391(c)(2).

## PARTIES

26.　　Plaintiff Patrick Shaffer is a citizen of Colorado and lives in Lone Tree, Colorado. He executed the Service Agreement on May 4, 2023. Plaintiff received all services in Colorado. Defendants charged Plaintiff the improper cancellation fee on or around April 21, 2024. After his account was sent to collections, Plaintiff paid the $150 cancellation fee to a collection agency on or around February 13, 2025.

27.    Plaintiff is a consumer who was victimized by EcoShield's unlawful scheme, suffered injury in fact, and lost money because of EcoShield's breach of contract, consumer protection law violations, and common law violations.

28.    EcoShield Pest Solutions Denver, LLC is a limited liability company registered in the state of Arizona. Its registration with the state of Arizona lists its address as 275 E. Rivulon Blvd., Suite 106, Gilbert, AZ 85297. The Service Agreement lists a phone number with a Colorado area code, provides a Colorado business license number, and provides an email address called "denver@theshieldco.com." EcoShield Pest Solutions Denver, LLC has a registered agent located in the State of Colorado and lists The Shield Co Management, LLC as its Manager and The Shield Companies, LLC as a member of the LLC. After Defendants sent Plaintiff's account to collections, the collection agency wrote to Plaintiff that it was "trying to collect a debt that you owe to EcoShield Pest Solutions DENVER, LLC."

29.    Defendants Robert Douglas Cardon and Gregory Nygren were the legal owners of the EcoShield trademark at the time Plaintiff executed and performed the Service Agreement. According to the USPTO, Defendants Cardon and Nygren are natural persons residing in the state of Arizona.

30.    The Shield Companies, LLC is a limited liability company registered in the state of Arizona. It is listed as a Member of The Shield Co Management, LLC, which is the Manager of Ecoshield Pest Solutions Denver, LLC. EcoShield employees have email domains @theshieldco.com. On May 6, 2024, Defendants Cardon and Nygren assigned their interest in the trademark "EcoShield" to The Shield Companies, LLC. Accordingly, upon information and belief, The Shield Companies, LLC is the current owner of the EcoShield trademark. Defendant The Shield Co Management, LLC is the manager of The Shield Companies, LLC, and Defendants Cardon and Nygren are members of The Shield Companies, LLC.

31.     The Shield Co Management, LLC is a limited liability company registered in the state of Arizona. Arizona registration records list The Shield Co Management, LLC as a Manager of EcoShield Pest Solutions Denver, LLC. Defendant The Shield Companies, LLC is the sole Member of the Shield Co Management, LLC. Defendants Cardon and Nygren, along with non-party Jason Jonas, are Managers of The Shield Co Management, LLC. The Shield Co Management, LLC holds itself out to the public as being the owner of the EcoShield brand. A job posting for The Shield Co Management, LLC claims that EcoShield is a brand of The Shield Co Management, LLC.[4]

32.     Upon information and belief, at all times pertinent to this action, the finances, policies, and business practices of Defendants were dominated and controlled by one another in such a manner that each individual Defendant has no separate mind, will, identity, or existence of its own and instead operated as mere instrumentalities and alter egos of one another.

33.     EcoShield failed to comply with corporate formalities, including by failing to have a specific legal entity as the signatory on its form customer contract. Instead, the Service Agreement only lists the contracting parties as non-entities "EcoShield" and "EcoShield Pest Solutions."

**FACTUAL ALLEGATIONS**

A.     **EcoShield's Unauthorized and Deceptive Cancellation Fee**

34.     EcoShield's Service Agreement describes itself as being a contract "between EcoShield Pest Solutions and Customer." Again, EcoShield Pest Solutions is not a legal entity, but rather a brand. At the top of Plaintiff's Service Agreement, Defendants wrote "EcoShield Pest Solutions – Denver South dba EcoShield Pest Solutions." EcoShield Pest Solutions – Denver South also is not a legal entity. The reference to "EcoShield Pest Solutions – Denver South" is a

---

[4] https://www.wayup.com/i-j-The-Shield-Co-Management-LLC-232331166968218/

reference to a branch location, not the specification of a contracting entity. This branch location contrasts with another EcoShield branch, EcoShield Pest Solutions – Denver North, located in Frederick, Colorado.[5]

35.    The Service Agreement's term is 12 months unless otherwise specified. In Plaintiff's case, the Service Agreement was for a 24-month term. Although the Service Agreement's term is for a fixed period, after the term expires, the Service Agreement perpetually renews until cancelled. The Service Agreement states that "[u]pon completion of the initial term of this Agreement, services will automatically continue at the same frequency until canceled by the customer." Ex. A at 1.

36.    The Service Agreement contains a box that outlines the customer's "QUARTERLY Subscription." *Id.* That box states that there will be $350 charge for the first visit followed by four quarterly extermination services each year. *Id.* Each quarterly service visit carries a separate $199 charge. *Id.*

37.    In addition to the specified service charges, the Service Agreement purports to disclose all other fees a customer might incur. These fees are limited to a "Delinquency Fee" for late payments and a "handling fee" for bounced checks. *Id.* at 3.

38.    The Service Agreement also has a merger clause. The Service Agreement states that "[t]his Agreement constitutes the entire understanding between EcoShield Pest Solutions and the Customer and supersedes all previous communications, understandings or agreements between the Parties relating to the subject matter of the Agreement." *Id.*

39.    The Service Agreement does not authorize EcoShield to charge a cancellation fee.

---

[5] https://www.ecoshieldpest.com/office-locations-2024

40.     Below a box fully listing the charges for the "QUARTERLY Subscription," the Service Agreement has a column for "Initial Service / Warranties" which lists the "Full Initial Service Charge" as $500 but also automatically provides a supposed $150 "Annual Commitment Discount" off of the purported $500 original price. *Id.*

41.     The Service Agreement also contains a "Notice of Right to Cancel" that purports to inform the customer of "my right to cancel this Agreement in accordance with the Federal Trade Commission's three-day cooling off period rule at the time of this Agreement." *Id.*

42.     Yet instead of providing a clear "notice" of the customer's "right" to cancel the subscription, EcoShield buries a trap within the fine print of this supposed "Notice of Right to Cancel."

43.      The "Notice of Right to Cancel" states that "if I cancel this Agreement after performance of the Initial Service, and more than three business days after the date of this Agreement, then I am responsible for payment of the costs of the Initial Service and any Discounts." *Id.*

44.     The term "Discounts" is capitalized, but it is not defined in the Service Agreement.

45.     Unbeknownst to a reasonable consumer, EcoShield interprets the fine print in its "Notice of Right to Cancel" to mean that a customer canceling at any point during the subscription term must pay EcoShield the $150 discount it automatically applied to the initial service charge. In other words, EcoShield misrepresents $150 cancellation fee as an "Annual Commitment Discount."

46.     The "Annual Commitment Discount" is not actually a discount, but rather a secret and unauthorized cancellation fee that must be paid when the subscription is cancelled. The "Annual Commitment Discount" is also not tied to any "Annual Commitment." For example,

Plaintiff paid for a full year of EcoShield's subscription, yet Defendants charged him the unlawful cancellation fee anyway.

47.    By deceptively misrepresenting and omitting the true nature of its cancellation fee, EcoShield both misrepresents the price of its subscription and induces unsuspecting consumers to assume subscription-related obligations that are not properly disclosed.

48.    The Service Agreement's failure to adequately explain EcoShield's cancellation fee practices also constitutes a material omission. The Service Agreement's misrepresentation of EcoShield's "discount" as being tied to an "annual commitment" constitutes a material misrepresentation because Defendants charge their cancellation fee even when a customer has maintained their EcoShield subscription for at least one year.

49.    Moreover, by making material misrepresentations and omissions about its cancellation fee, EcoShield is able to charge consumers a price premium for its subscriptions than it would otherwise have been able to charge.

**B.    Plaintiff's Experience with EcoShield**

50.    Following a door-to-door solicitation, Plaintiff signed the Service Agreement with EcoShield on May 4, 2023. Ex. A. Before signing the Service Agreement, Plaintiff reviewed it to understand what signing it entailed.

51.    Plaintiff paid the initial service charge and thereafter paid four quarterly service charges. Plaintiff paid a total of $1,147 for these five separate visits.

52.    In other words, Plaintiff paid for a complete year of the EcoShield services set forth in the Service Agreement.

53.    Unsatisfied with EcoShield's services, Plaintiff called to cancel the subscription.

54.     After Plaintiff thought he had canceled the subscription, a representative of EcoShield emailed Plaintiff stating, "just as a reminder, there is a charge associated with canceling if you are still within the terms of your Service Agreement."

55.     But Plaintiff had paid for a full year of EcoShield's service, so to the extent he had any obligation to repay the "Annual Commitment Discount," Plaintiff had fulfilled his obligation by paying for a full year's worth of the EcoShield services outlined in the Service Agreement. In other words, Plaintiff fulfilled the "Annual Commitment" aspect of EcoShield's supposed "discount."

56.     Upon information and belief, EcoShield uses the "Annual Commitment Discount" as a hidden cancellation fee regardless of when a customer cancels.

57.     Upon information and belief, EcoShield intentionally withholds information revealing the true nature of its cancellation fee to induce consumers to purchase subscriptions with EcoShield.

58.     After being charged the $150 cancellation fee, Plaintiff protested to EcoShield.

59.     EcoShield refused to waive its unauthorized and deceptive cancellation fee and instead sent Plaintiff's account to collections.

60.     Plaintiff then paid the debt collector the $150 fee.

61.     Had Plaintiff not paid the $150 fee, his credit could have been negatively impacted.

## CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all EcoShield customers in the United States (including customers of any successors or predecessors of EcoShield) who entered into a service agreement with EcoShield at

any time from the longest applicable statute of limitations period to the date of judgment and were later charged a cancellation fee despite having subscribed for at least one year (the "Class").

63.     As alleged throughout this Complaint, the Class's claims all derive directly from a single course of conduct by Defendants. Defendants have engaged in uniform and standardized conduct toward the Class and this case is about the responsibility of Defendants, at law and in equity, for their knowledge and conduct in deceiving their customers and breaching their form contract. Defendants' conduct did not meaningfully differ among individual Class Members in their degree of care or candor, or their actions or inactions.

64.     Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants. Also excluded are federal, state and local government entities; and any judge, justice, or judicial officer presiding over this action and the members of their immediate families and judicial staff.

65.     Plaintiff reserves the right, as might be necessary or appropriate, to modify or amend the definition of the Class, when Plaintiff files his motion for class certification.

66.     Plaintiff does not know the exact size of the Class since such information is in the exclusive control of Defendants. Plaintiff believes, however, that the Class encompasses thousands of consumers whose identities can be readily ascertained from EcoShield's records. Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

67.     The Class is ascertainable because its members can be readily identified using data and information kept by Defendants in the usual course of business and within their control. Plaintiff anticipates providing appropriate notice to each Class Member in compliance with all applicable federal rules.

68.    Plaintiff is an adequate class representative and has no conflicts with the interests of any other members of the Class.

69.    Plaintiff's claims are typical of the claims of the Class. Plaintiff and the other members of the Class were subject to the same or similar conduct engineered by Defendants. Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Defendants' conduct.

70.    Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff has retained competent and experienced class action attorneys to represent his interests and those of the Class.

71.    Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

   a.   Whether Defendants' conduct breached the Service Agreement;

   b.   Whether Defendants' conduct breached the covenant of good faith and fair dealing;

   c.   Whether Defendants' conduct violates the applicable consumer protection statutes;

   d.   Whether Defendants' conduct violates the applicable common law;

   e.   Whether Defendants were unjustly enriched as a result of their conduct;

   f.   Whether Class Members have been injured by Defendants' conduct;

   g.   Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

   h.   The extent of class-wide injury and the measure of damages for those injuries.

72.    A class action is superior to all other available methods for resolving this controversy because: (1) the prosecution of separate actions by Class Members will create a risk

13

of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (2) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendants' conduct; (3) Defendants have acted or refused to act on grounds generally applicable to all Class Members; and (4) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

73.    Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

    a.    Whether Defendants' conduct breached the Service Agreement;

    b.    Whether Defendants' conduct breached the covenant of good faith and fair dealing;

    c.    Whether Defendants' conduct violates the applicable consumer protection statutes;

    d.    Whether Defendants' conduct violates the applicable common law;

    e.    Whether Defendants were unjustly enriched as a result of their conduct;

    f.    Whether Class Members have been injured by Defendants' conduct; and

    g.    Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices.

74.    Accordingly, this action satisfies the requirements set forth under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

## <u>COUNT I</u>

### <u>BREACH OF CONTRACT</u>
### (ON BEHALF OF THE NATIONWIDE CLASS)

75.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

76.     Plaintiff brings this claim on his own behalf and on behalf of each member the Class.

77.     The Service Agreement provides that the "agreement shall be construed under and in accordance with the substantive laws of the state of Arizona." Upon information and belief, all Class Member contracts with EcoShield require the application of Arizona law to issues relating to the breach of such contracts.

78.     Plaintiff and all Class Members contracted with EcoShield by agreeing to the Service Agreement (or a materially similar contract).

79.     The contracts between EcoShield and Class Members do not authorize EcoShield's cancellation fee practices.

80.     EcoShield breached its contracts with Class Members by charging unauthorized cancellation fees.

81.     Plaintiff and all Class Members suffered damages by being charged an unauthorized cancellation fee.

82.     EcoShield's contracts with its customers are contracts of adhesion.

83.     There was a large disparity of bargaining power between EcoShield and its customers when it came to the terms of EcoShield's customer contract.

84.     EcoShield drafted the contracts signed by Class Members, and as such, to the extent there is any ambiguity or vagueness in those contracts, that ambiguity or vagueness should be construed against EcoShield.

85.     To the extent the Service Agreement required an "Annual Commitment" in exchange for the initial fee discount, Plaintiff and Class Members complied with the "Annual Commitment" and were nevertheless still charged the fee. This was a breach of the Service Agreement.

86.     Defendants knew or should have known that their conduct breached the Service Agreement.

87.     Plaintiff and Class Members suffered monetary damages as a result of Defendants' conduct.

88.     Defendants are liable to Plaintiff and Class Members for actual damages sustained.

## **COUNT II**

### **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
### **(ON BEHALF OF THE NATIONWIDE CLASS)**

89.     Plaintiff incorporates by reference all preceding and subsequent paragraphs.

90.     Plaintiff brings this claim on his own behalf and on behalf of each member the Class.

91.     Every contract contains an implied covenant of good faith and fair dealing. The implied covenant is an independent duty and may be breached even if there is no breach of the contract's express terms.

92.     The implied covenant prohibits either party from acting in a way to impair the rights of the other party to receive the benefits of their agreement.

93.     Plaintiff reasonably expected that EcoShield would not charge him a cancellation fee after his having subscribed for a year.

94.     EcoShield also breached the covenant of good faith and fair dealing by deceptively labeling the cancellation fee an "Annual Commitment Discount" and still charging the cancellation fee even if a customer kept the subscription for at least a year.

95.     Plaintiff and Class Members suffered monetary damages as a result of Defendants' conduct.

96.     As a result of Defendants' breaches, EcoShield is liable to Plaintiff and Class Members for damages and attorneys' fees and expenses.

## COUNT III

## CONSUMER PROTECTION VIOLATIONS
**(ON BEHALF OF THE NATIONWIDE CLASS APPLYING COLORADO OR ARIZONA LAW OR ON BEHALF OF INDIVIDUAL STATE SUBCLASSES APPLYING THE LAW OF THOSE STATES)**

97. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

98. Plaintiff brings this claim on his own behalf and on behalf of each member the Class.

99. Plaintiff brings this count either on behalf of a nationwide class of customers applying Colorado law, a nationwide class applying Arizona law, or statewide subclasses for each state in which EcoShield does business pursuant to the laws of those states.

100. EcoShield engaged in deceptive business practices pursuant to Colo. Rev. Stat 6-1-105(i), (l), (m), (u), and (rrr) which provide, in pertinent part, that "a person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, the person:

\* \* \*

(i) Advertises goods, services, or property with intent not to sell them as advertised

\* \* \*

(l) Makes false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions;

\* \* \*

(m) Fails to deliver to the customer at the time of an installment sale of goods or services a written order, contract, or receipt setting forth the name and address of the seller, the name and address of the organization which he represents, and all of the terms and conditions of the sale, including a description of the goods or services, stated in readable, clear, and unambiguous language

\* \* \*

(u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction;

\* \* \*

17

(rrr) Either knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice[.]"

101.    EcoShield engaged in a deceptive scheme to disguise its cancellation fee as a "discount" and then charged the fee even if customers kept their subscriptions for at least a year.

102.    EcoShield knew that this practice was misleading.

103.    The Service Agreement's failure to adequately explain EcoShield's cancellation fee practices also constitutes a material omission.

104.    Through their deceptive scheme as alleged throughout this Complaint, Defendants engaged in deceptive acts or practices that violated the Colorado Consumer Protection Act.

105.    Defendants systematically misrepresented, concealed, suppressed, and omitted material facts relating to the cancellation fee in the course of their business.

106.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business and significantly impact a substantial portion of the purchasing public as actual or potential customers of Defendants.

107.    Defendants knew or should have known that their conduct constituted a deceptive practice under the Colorado Consumer Protection Act and any other relevant applicable consumer protection statutes, including Arizona's Consumer Fraud Act.

108.    Plaintiff and Class Members suffered monetary damages as a result of Defendants' conduct.

109.    Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

110.    Defendants are liable to Plaintiff and Class Members for actual damages sustained plus three times the amount of actual damages plus costs and attorneys' fees as determined by the court for violation of the Colorado Consumer Protection Act.

111.    To the extent Arizona law is applied, EcoShield violated the Arizona Consumer Fraud Act. Under A.R.S. § 44-1522(A), "use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

112.    As alleged herein, Defendants knew their representations and omissions about the cancellation fee were materially misleading.

113.    Plaintiff and the Class suffered damages as a result of EcoShield's deceptive practices.

114.    EcoShield is liable for actual damages, punitive damages, and costs and fees as allowed by the court for its violation of the Arizona Consumer Fraud Act.

115.    The states in which EcoShield does business have materially identical consumer protection statutes entitling consumers to damages for EcoShield's deceptive practices.

116.    Pursuant to those materially identical consumer protection statutes, consumers are protected against deceptive acts or practices, misrepresentations, or omissions which affect business, trade, or commerce.

117.    In addition to the consumer protection statutes of Colorado and Arizona, EcoShield violated at least the following materially identical statutes:

A. California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*., and California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*.;[6]

B. Delaware Consumer Fraud Act, Del. Code. Ann. Tit. 6, §§2511 *et seq*.;

C. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*.;

D. Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-390 *et seq*.;

E. Hawaii Unfair and Deceptive Practices Act, Haw. Rev. Stat. §§ 480-1 *et seq*.;

F. Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS §§ 505/1 *et seq*.;

G. Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et seq*.;[7]

H. Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623 *et seq*.;

I. Maryland Consumer Protection Act, Md. Commercial Law Code Ann. §§ 13-303 *et seq*.;

J. Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901 *et seq*.;

K. Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68 *et seq*.;

L. Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 *et seq*.;

M. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq*.;

N. New York General Business Law § 349;

O. Ohio Consumer Sales Practice Act, Ohio Rev. Code Ann. §§ 1345.01 *et seq*.;[8]

---

[6] Pursuant to Cal. Civ. Code § 1782, Plaintiffs shall send a notice and demand letter by registered mail to EcoShield.

[7] Because Defendants' deception was intentional, as part of a scheme, artifice, or device with intent to defraud or mislead, Ind. Code. § 24-5-0.5-2(a)(8), Plaintiff is exempt from this statute's pre-suit notice requirement.

[8] Defendants had prior notice that their acts were deceptive under Ohio law, as their conduct violated numerous rules promulgated by the Ohio Attorney General pursuant to Ohio Rev. Code Ann. § 13445.05(B)(2), including but not limited to Ohio Admin. Code 109:4-3-02(A)(2)(g) and (C), 109:4-3-04, and 109:4-3-11(A)(5) and (12).

P.  Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751 *et seq*.;

Q.  Oregon Unlawful Trade Practices Law, Or. Rev. Stat. §§ 646.605 *et seq*.;

R.  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S.

§§ 201-1 *et seq*.;

S.  Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 *et seq*.;

T.  Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et*

*seq*.;

U.  Utah Consumer Sales Practice Act, Utah Code Ann. § 13-11-5 *et seq*.;

V.  Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et seq*.

W.  Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 *et seq*.; and

X.  Wisconsin Consumer Act, Wis. Stat. §§ 100.18 *et seq*.

118.    To the extent the Court determines that varying state laws apply to a Class Member's consumer protection claim, Plaintiff will establish that the elements of each state's consumer protection statutes have been satisfied.

## COUNT IV

### CONVERSION
### (ON BEHALF OF THE NATIONWIDE CLASS)

119.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

120.    Plaintiff brings this claim on his own behalf and on behalf of each member of a nationwide Class under Colorado law, Arizona law, or the laws of each of the states where Defendants do business that permit an independent cause of action for conversion, or, alternatively, on behalf of each member of individual state subclasses under the laws of those States.

121.    In all states where Defendants do business, there is no material difference in the law of conversion as applied to the claims and questions in this case.

122.    Plaintiff and Class Members own and have a right to possess the money that is in their respective bank accounts, internet payment accounts, and/or credit cards.

123.    Defendants substantially interfered with Plaintiff's and Class Members' possession of this money by knowingly and intentionally making unauthorized charges to their bank accounts, internet payment accounts, and/or credit cards for EcoShield's unlawful cancellation fees or by sending Plaintiff's and Class Members' accounts to debt collectors for collection of these improper fees.

124.    Defendants wrongfully retained dominion over this monetary property and/or the time-value of the monetary property.

125.    Plaintiff and the Class have been damaged by Defendants' wrongful taking and/or possession of such money from their bank accounts, internet payment accounts, and/or credit cards in an amount that is capable of identification through Defendants' records.

126.    By reason of the foregoing, Defendants are liable to Plaintiff and the Class for conversion in an amount to be proved at trial and any punitive damages, fees, and costs allowed by the Court.

## COUNT V

**UNJUST ENRICHMENT**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

127.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

128.    Plaintiff brings this claim on his own behalf and on behalf of each member of a nationwide Class under Colorado law, Arizona law, or the laws of each of the states where Defendants do business that permit an independent cause of action for unjust enrichment, or, alternatively, on behalf of each member of individual state subclasses under the laws of those States.

129.    In all states where Defendants do business, there is no material difference in the law of unjust enrichment as applied to the claims and questions in this case.

130.    As a result of their unjust conduct, Defendants have been unjustly enriched.

131.    By reason of their wrongful conduct, Defendants have benefited from receipt and maintenance of improper funds. Under principles of equity and good conscience, Defendants should not be permitted to keep this money.

132.    As a result of Defendants' conduct it would be unjust and/or inequitable for Defendants to retain the benefits of its conduct without restitution to Plaintiff and the Class. Accordingly, Defendants must account to Plaintiff and the Class for their unjust enrichment.

133.    EcoShield is liable to Plaintiff and the Class for an amount to be determined at trial or by the Court for damages, fees, and costs as allowed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)    Issue an order certifying the Class defined above, appointing the Plaintiff as Class representative, and designating Wittels McInturff Palikovic as Class Counsel;

(b)    Find that Defendants have committed the violations of law alleged herein;

(c)    Determine that Defendants have been unjustly enriched as a result of their wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

(d)    Enter an order granting all appropriate relief including injunctive relief on behalf of the Class under applicable law;

(e)    Render an award of compensatory damages and statutory damages (including treble, statutory, or other damages) of no less than $5,500,000, the exact amount of which is to be determined at trial;

(f)    Issue an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged herein;

(g)    Declare that Defendants have committed the violations of law alleged herein;

(h)    Render an award of punitive damages and/or any statutory or treble damages;

(i)    Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(j)    Grant all such other relief as the Court deems appropriate.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiff demands that a jury determine any issue triable of right.

## NOTICE TO ATTORNEYS GENERAL

A copy of this Complaint will be electronically mailed to the Attorney General of the State of New Jersey within twenty-four hours of its filing, pursuant to N.J.S.A. § 56:8-20.

A copy of this Complaint will be mailed to the Attorney General of the State of Illinois pursuant to 815 I.L.C.S § 505/10a(d).

A copy of this Complaint will be mailed to the Attorney General of the State of Georgia within 20 days pursuant to Ga. Code Ann. § 10-1-399(g).

A copy of this Complaint will be mailed to the Attorney General of the State of Washington pursuant to Wash. Rev. Code § 19.86.095.

A copy of this Complaint will be mailed to the Attorney General of the State of Michigan pursuant to Mich. Comp. Laws § 445.912(1).

Dated: April 3, 2025              **WITTELS MCINTURFF PALIKOVIC**

/s/ J. Burkett McInturff
J. Burkett McInturff
Daniel J. Brenner
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Tel: (914) 775-8862

jbm@wittelslaw.com
djb@wittelslaw.com

*Counsel for Plaintiff and the Proposed Class*